FRANKLIN KING & others, petitioners.

Suffolk. March 12. — Sept. 13, 1880. ENDICOTT & SOULE, JJ., absent.

The costs of the proceedings of commissioners, appointed under the St. of 1871, c. 338, to make division of flats, are to be apportioned among the several owners thereof, according to the market value of their respective shares or interests, and not according to the area of the flats.

If, upon a petition under the St. of 1871, c. 338, for a division of flats, commissioners are appointed, who notify and hear all parties interested, make their surveys and plan, and report to the court, and the report and plan are approved and ordered to be recorded, and no exception is taken to the report, the objection is not open, upon the apportionment of costs of the proceedings, that the commissioners have failed to fix the boundaries of the flats wholly below mean high-water mark and not adjacent to upland held by the same owner.

LORD, J. This is a petition under the St. of 1871, c. 338, for a division of flats. All the parties now before the court originally joined in the petition, and have continued parties thereto throughout all the proceedings.

The statute was designed for the benefit of owners of flats. It was understood by such owners to be for their benefit. The boundary lines of flats, by reason of the peculiar conformation of the upland, are not always easily ascertainable. To avoid dispute, difficulty and litigation, it was deemed expedient to authorize that "persons holding lands or flats adjacent to or covered by high water may have the lines and boundaries of their ownership in such flats settled and determined." To this end any one or more of the persons holding such lands or flats may apply by petition to this court "for the settlement and determination of ownership in such flats." Upon such petition, the court may appoint commissioners, whose duty it is "to make a survey of the flats of the petitioners, and of all other flats adjacent and owned by other parties, whose rights may be affected in determining the lines of such petitioners' flats," and "determine the boundary lines of all such flats, and report to the court the boundaries established for each owner of such flats, with a plan of the several portions of flats, showing the lines established for each owner, which plan, after its approval, shall by order of the court be recorded in the registry of deeds for the county where

said flats lie." It is also provided by the same act that the report of such commissioners, with the plan, when so accepted by the court, and so recorded, "shall forever fix and determine the rights of all persons and parties, except where definite boundary lines have been established by parties legally authorized so to do."

Under this petition, commissioners were appointed, who notified and heard all parties interested, made their surveys and plan, and made their report to the court, which report and plan were approved, and ordered to be recorded in the registry of deeds. No exception has been taken to the report of the commissioners, and all proceedings under the petition are finished, and the only question open now and undecided is the apportionment of the expenses and charges of the commissioners and the other costs of the proceeding among the several petitioners. The statute provides that "the expenses and charges of the commissioners shall be ascertained and allowed by the court; the other costs shall be taxed in the usual manner, and the whole shall be apportioned by the court upon all parties interested in determining their boundary lines over such flats, to be paid in proportion to the share or interest they respectively hold in the flats."

The amount of costs to be apportioned was fixed, and there was no controversy as to its correctness. The only question made was as to the apportionment. This question was referred to an assessor, who made his report to the court. By that report, the assessor has divided the flats into two classes; one class embracing flats adjacent to upland belonging to the same owner; the other, flats which are not adjacent or appurtenant to upland owned by such parties. We do not understand that exception or objection is taken to this classification, or that it would make any difference in the apportionment, except that one or more of the petitioners contends that flats not adjacent to upland belonging to the same owner should not be assessed at all. The assessor has made his report, and has apportioned the cost and expenses among the various owners according to the market value of their respective shares or interests, exclusive of improvements made upon such flats as were adjacent to upland held by the same owner.

The objection to this apportionment is, first, that the basis of apportionment adopted by the assessor is radically wrong, and that, instead of adopting the market value of the several portions of flats as his basis for apportioning the costs, he should have adopted area of flats alone, irrespective of their value. The area of flats is very often in the inverse ratio of their value, and it would require stringent language to induce us to believe that the Legislature intended that the expenses of a proceeding designed for the mutual benefit of all the owners of flats should be borne in what may be the inverse ratio of the benefit conferred. But, upon looking at the statute, we are satisfied that the elaborate and ingenious criticism of words fails wholly to take from the language of the statute its obvious purpose to make the flats contribute to the proceeding in proportion to their value. That language is, "in proportion to the share or interest." These are equivalent terms, and, if any criticism is to be made by reason of the use of both words, this is the obvious criticism: that "interest" is used for the purpose of defining and making certain the meaning of the word "share;" and the meaning of the word "interest," when applied to a kindred subject, has been judicially determined to refer to value, and not to area. *Henry* v. *Thomas*, 119 Mass. 583. In that case, it was a petition for the appointment of commissioners to prescribe the measures to be adopted for the improvement of certain meadow lands of which the petitioners claimed to be the greater part in interest; and the judge of the Superior Court ruled that "the greater part in interest" meant those having the greater part in extent of territorial area, and not in value, which ruling this court held to be erroneous. We think, therefore, that, upon the words of the statute, the rule adopted by the assessor was the true rule.

Prior to the St. of 1871, a division of flats was authorized under the St. of 1864, *c.* 306, and the proceedings to that end were under the provisions of the Gen. Sts. *c.* 136, relating to the partition of lands. That statute uses the same words, "share or interest;" and in the statute for the partition of lands, no other meaning can be attached to the words than that of value.

The remaining question is whether any part of the expense should be apportioned to those flats which are wholly below

mean high-water mark, and not adjacent to upland held by the same owner. The ground upon which it is contended that such flats should not bear any portion of the expense of determining their boundaries is that the commissioners have failed to fix the boundaries. This subject is not open upon the report before us. The petition embraced these flats in terms. The statute does not exclude the jurisdiction of the commissioners over them. They acted under the petition in reference to these flats; they made surveys and plans which included these flats, and marked the boundary lines thereof; and their report in reference to them was accepted by the court. If there had been any failure to perform their duty, or any irregularity in the mode of the performance of it, the proper time to object to their action or mode of action was before the acceptance of their report by the court; and, if the acceptance of their report was in any manner prejudicial to the rights of any party, such party should have taken exception to the ruling of the court accepting the report. The commissioners, having the subject before them properly presented by the petitioners, have made a return in which they profess to have performed the duty assigned to them. Upon the taxation or apportionment of costs, no such question can be open; and, inasmuch as these are the only objections to the report of the assessor, the apportionment of costs must be *In accordance with the assessor's report.*

*T. S. Dame & C. T. Gallagher*, against the apportionment made by the assessor.

*W. A. Munroe*, (*C. R. Train & A. S. Wheeler* with him,) in support of such apportionment.